UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID ALLEN,

           Plaintiff,

    v.

NORM KRAMER, *et al.*,

           Defendants.

No. 1:15-cv-01609-DAD-JDP

FINDINGS AND RECOMMENDATIONS THAT THE COURT:

(1) DENY DEFENDANTS' MOTIONS FOR STAY, ECF Nos. 51, 52,

(2) GRANT IN PART DENY IN PART STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF No. 34,

(3) GRANT COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF Nos. 32, 33,

(4) DENY PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT, ECF Nos. 44, 45, 46, 59, 62, AND

(5) DENY PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT WITHOUT PREJUDICE, ECF No. 65.

OBJECTIONS DUE IN 14 DAYS

Plaintiff David Allen, a civil detainee, proceeds without counsel in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff is an African American with psoriasis who is involuntarily committed to Coalinga State Hospital ("CSH") under California's Sexually Violent Predator Act ("SVPA"). Plaintiff alleges that defendants have subjected him to an ongoing threat

of contracting Coccidiomycosis ("Valley Fever") by (1) constructing CSH in a region identified as the hyperepidemic area for Valley Fever, (2) placing plaintiff at CSH, and (3) failing to implement various measures to mitigate the risk of Valley Fever. He has sued several hospital administrators, California state health department officials ("State Defendants"), and Fresno County officials ("County Defendants"). Plaintiff seeks damages, declaratory relief, and injunctive relief. All parties move for summary judgment.

We must consider whether qualified immunity precludes plaintiff's claims for damages. Given the Ninth Circuit's recent decision in *Hines v. Youseff*, __ F.3d __ No. 15-16145, 2019 WL 405543 (9th Cir. Feb. 1, 2019), we conclude that qualified immunity shields State Defendants from plaintiff's claims for money damages, but not from his claims for declaratory and injunctive relief. Against County Defendants, on the other hand, we conclude that plaintiff cannot show causation. Plaintiff has filed several motions for summary judgment, but he concedes in those motions that there are genuine disputes of material fact; he has not shown that he is entitled to summary judgment. We therefore recommend that the court grant State Defendants' motion for summary judgment in part, grant County Defendants' motion for summary judgment in full, and deny plaintiff's motions for summary judgment.

## I.    Background

Plaintiff is a patient at CSH, a mental hospital in California's Central Valley. State Defendants are former or current hospital administrators and health officials of California. Stephen Mayberg is former Director of the Department of Mental Health. Norm Kramer is former Acting Executive Director of CSH. Pam Ahlin is Director of the Department of State Hospitals and former Executive Director of CSH. Cliff Allenby was Acting Director of the California Department of State Hospitals and Acting Director of the Department of Mental Health.[1] County Defendants are members of the Fresno County Board of Supervisors and Fresno

---

[1] It appears that defendant Allenby recently passed away. *See* Bryan Anderson, *A superb public servant: Longtime California official Cliff Allenby dies at 82*, SACRAMENTO BEE (Sep. 24, 2018). Plaintiff asserts a claim against Allenby in his official capacity for injunctive relief, so the court can substitute Allenby's successor or another official in his place. *See* Fed. R. Civ. P. 17(d), 19(a)(2), 25(d).

County.[2]  This case concerns plaintiff's exposure to Valley Fever at CSH, where he has stayed since 2007.

### a.  Valley Fever

The following facts are drawn from exhibits submitted by the parties and materials subject to judicial notice.  Although State Defendants have objected to the admissibility of plaintiff's exhibits on hearsay grounds, ECF No. 58 at 5, they have not shown that plaintiff cannot present the exhibits cited below in admissible form at trial.  *See* Fed. R. Civ. P. 56(c)(2).  This court has considered the same materials in other Valley Fever cases and should do the same here.[3]

Valley Fever is an infectious disease caused by the inhalation of spores of *Coccidiomycosis immitis* ("*C. immitis*"), a fungus that lives in the soils of southwestern United States.  Inhaling the spores into one's lungs can result in primary infection, which can cause symptoms such as lesions in the lungs, fever, chills, night sweats, chest pains, cough, appetite loss, muscle pain, and joint aches.  More serious consequences such as meningitis and death can develop if the fungus spreads from the lungs to other parts of the body.  "If left untreated and allowed to progress to meningitis, the disseminated form of the disease is uniformly fatal." *Edison v. United States*, 822 F.3d 510, 514-15 (9th Cir. 2016).

Various factors increase the risk of contracting Valley Fever.  One such factor is race: African Americans, Filipinos, Hispanics, and Native Americans are more susceptible to the disease than the members of other races.  Individuals with autoimmune diseases also face heightened risk of contracting the disease, as do individuals more likely to inhale *C. immitis*

---

[2] Plaintiff need not identify the individual members of Fresno Board of Supervisors by their names because he proceeds against them in their official capacities.  *See* Fed. R. Civ. P. 17(d).

[3] *See generally Hines*, 2019 WL 405543, at *2 (background on Valley Fever); *Edison v. United States*, 822 F.3d 510, 515 n.1 (9th Cir. 2016) (taking judicial notice of publication on Coccidioidomycosis from Centers for Disease Control and Prevention) (citing *Morbidity and Mortality Weekly Report: Coccidioidomycosis—California, 1991-1993*, CTR. FOR DISEASE CONTROL & PREVENTION (Jun. 17, 1994)); ECF No. 1 at 29-35, Dwight Winslow, *Recommendations for Coccidiomycosis Mitigation in Prisons in the Hyperendemic Areas of California*; *id*. at 52-68, Demosthenes Pappagianis, *Coccidiomycosis in California Correctional Institutions*; *Hines v. Youssef*, No. 1:13-cv-357, 2015 WL 2385095, at *2 (E.D. Cal. May 19, 2015) (considering Winslow Report and Pappagianis Study at summary judgment) (No. 13-cv-00357, ECF No. 59-7 at 29-52).

3

spores, such as individuals living in areas where the spores are common, individuals exposed to dusty conditions, and individuals engaging in outdoor activities for extended periods. The parties agree that Valley Fever is a serious medical condition. Prison officials in California have implemented measures to mitigate the risk of Valley Fever, although the adequacy of those measures has been disputed in court.[4]

**b. Coalinga State Hospital**

We draw the following facts from plaintiff's verified complaint, the parties' declarations, the court order committing plaintiff to CSH under the SVPA, and the parties' statements of facts.[5] The court should consider the factual allegations in plaintiff's verified complaint, ECF No. 1, notwithstanding defendants' objections; the verified complaint describes plaintiff's conditions of confinement based on plaintiff's personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). The parties do not object to other materials.

Plaintiff challenges his conditions of confinement at CSH, which he claims put him at risk of contracting Valley Fever. According to plaintiff, defendants exposed him to risk in three ways. First, State and County Defendants allowed the construction of CSH in an hyperendemic area for Valley Fever. The parties agree that City of Coalinga annexed the land for CSH in 1999, that CSH's construction began in 2001, and that CSH opened in 2005. The annexation was approved by the Fresno County Local Agency Formation Commission ("Fresno LAFCO"). Despite its name, Fresno LAFCO was not controlled by County Defendants, as explained below. The parties dispute whether Mayberg had the authority to approve CSH's construction.

Second, plaintiff alleges that State Defendants "transported" plaintiff to CSH, exposing him to a risk of contracting Valley Fever. *See* ECF No. 1 at 8-11; ECF No. 10 at 3, 19-20. In

---

[4] The background on medical care in California prisons and Valley Fever litigation has been summarized in several court opinions. *See generally Brown v. Plata*, 563 U.S. 493, 499 (2011); *Plata v. Brown*, 754 F.3d 1070, 1072, 1079 (9th Cir. 2014); *Smith v. Schwarzenegger*, 137 F. Supp. 3d 1233, 1243 (E.D. Cal. 2015); *Jackson v. Brown*, 134 F. Supp. 3d 1237, 1239 (E.D. Cal. 2015); *Hines*, 2015 WL 2385095, at *4; *Plata v. Brown*, No. 1-cv-1351, 2013 WL 3200587, at *3 (N.D. Cal. June 24, 2013).

[5] *See* ECF Nos. 1, 34-4, 34-5, 34-6, 47, 48, 50 at 7-8, 54 at 68-69, 59-1 at 1-3, 62-1 at 1-3.

4

response to defendants' motions for summary judgment, plaintiff adduces no evidence that any defendant personally decided to place plaintiff at CSH or that they indirectly caused plaintiff's placement at CSH. Plaintiff has also submitted an order from the Superior Court for County of Alameda directing plaintiff's initial placement at CSH in 2007. *See* ECF No. 50 at 7-8 ("The Sheriff of Alameda County shall transport the Respondent to Coalinga State Hospital, where he shall be retained until further order of the Court."). It does not appear from the record that he has requested to be transferred to a different facility.

Third, plaintiff contends that defendant Allenby failed to implement various measures to mitigate the risk of Valley Fever. ECF No. 1 at 9-10, 13-16, 19-20. Plaintiff states in his verified complaint that CSH lacks a proper ventilation system and several measures recommended by State Defendants' own experts. He also states that CSH needs other measures that he alleges would help protect him against Valley Fever: treatment planning, assessments and diagnoses, psychiatric services, psychological services, nursing services, emotional rehabilitation services, physical therapy services, dust masks, adequate nutrition, services from the pharmaceutical department, and training on Valley Fever. On the other hand, State Defendants adduce their own declarations stating that they have already put in place certain measures against Valley Fever. ECF Nos. 34-4, 34-5, 34-6. They note that CSH has been subject to audit by the Department of Public Health ("DPH"). ECF No. 34-4 at 2; ECF No. 34-5 at 2. Kramer and Ahlin state in their declarations that they have not seen a DPH audit report finding CSH to be in violation of any regulation or requirement. ECF No. 34-4 at 2; ECF No. 34-5 at 2. They also state that they have not seen a DPH audit report finding any deficiency in CSH's practices relating to Valley Fever. Mayberg states that he attended quarterly meetings with representatives from state hospitals including CSH and that he does not recall any concern raised at those meetings about the lack of precautions against Valley Fever. ECF No. 34-6 at 3.

Plaintiff has not contracted Valley Fever, but he alleges that the conditions at CSH expose him to an ongoing risk of contracting the disease. Plaintiff is an African American with psoriasis,

a condition that can affect the immune system's ability fight infections. ECF No. 59-1 at 2.[6]

According to plaintiff, his race, coupled with his psoriasis, CSH's location in a hyperendemic area for Valley Fever, and CSH's inadequate measures against the disease continue to expose him to an ongoing danger. In his verified complaint, plaintiff states that staff members and patients at CSH have suffered serious symptoms and that some have even died from Valley Fever. ECF No. 1 at 6-7.

## II. Preliminary Matters

We begin with three preliminary matters. First, the screening order issued earlier in the case requires some clarification. Second, all defendants move for a stay of proceedings pending the Ninth Circuit's decision in *Hines v. Youseff*, __ F.3d __ No. 15-16145, 2019 WL 405543 (9th Cir. Feb. 1, 2019). Third, plaintiff moves to supplement his opposition to defendants' motions for summary judgment.

### a. Plaintiff's Claims

The screening order from earlier in the case, ECF No. 10, presents two issues. First, the order explained that plaintiff stated a claim against defendant Cliff Allenby but still dismissed defendant Allenby from the case.[7] *Id*. at 19-20, 24; *see also* ECF No. 12; ECF No. 13 at 2-3. It appears from the screening order that the dismissal of Allenby resulted from a typographical error: the order omitted in the conclusion section that plaintiff had stated a claim against Allenby. *See* ECF No. 10 at 19-20, 24. Allenby has not been served and has not appeared in this case.

Second, the screening order analyzed plaintiff's claims under the Eighth Amendment, which applies to prisoners, not the Fourteenth Amendment, which applies to civil detainees like plaintiff. In a Section 1983 action, the Fourteenth Amendment governs the civil detainee's conditions-of-confinement claims, and a court errs by applying the Eighth Amendment. *See Jones*, 393 F.3d at 931 ("Though [the district court] purported to analyze Jones's conditions of

---

[6] *See generally Tierney v. Jones*, No. 17-cv-5, 2018 WL 4212431, at *3 n.6 (N.D. Fla. July 26, 2018); Psoriasis, Stedmans Medical Dictionary § 735520 (2005); ECF No. 66 at 133-38.

[7] The Ninth Circuit in *Sullivan v. Kramer*, another case involving Valley Fever and a CSH patient, concluded that similar allegations stated a conditions-of-confinement claim against Allenby and that dismissing him was an error. 609 F. App'x 435, 436 (9th Cir. 2015).

confinement claim under the Fourteenth Amendment, the district court actually applied the standards that govern a claim of cruel and unusual punishment under the Eighth Amendment. The court mistook the amendment that was to be applied."). Although the standards of the Eighth and Fourteenth Amendments overlap to some degree, they differ in an important way in this case. The parties have raised arguments under the Eighth Amendment's deliberate indifference standard, and they dispute whether State Defendants had knowledge of the risk of harm to plaintiff; the Ninth Circuit's Fourteenth Amendment jurisprudence—in contrast to its Eighth Amendment jurisprudence—"has never required officials to have subjective awareness of the risk of harm." *Ammons v. Washington Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1029 n.7 (9th Cir. 2011).

Nonetheless, the two matters discussed above do not affect our analysis of several issues raised in the parties' cross motions for summary judgment. And even though the screening order applied the Eighth Amendment to plaintiff's claims, the parties raise in various parts of their briefs a few, somewhat undeveloped alternative arguments that analyze plaintiff's claims under the Fourteenth Amendment in addition to their analyses under the Eighth Amendment. The court should therefore address the parties' motions for summary judgment. The inadvertent dismissal of Allenby and application of the Eighth Amendment do not affect the two grounds that warrant summary judgment: qualified immunity and causation.[8]

**b. Defendants' Motions to Stay**

Defendants move to stay the proceeding pending the decision by the Ninth Circuit in *Hines*, 2019 WL 405543. ECF Nos. 51, 52. The panel in *Hines* has issued its decision, and a

---

[8] The two issues warrant vacating the August 17, 2016 screening order and allowing plaintiff to proceed against Allenby and other defendants under the Fourteenth Amendment after the partial grant of summary judgment. This approach seems unavoidable given the inadvertent dismissal of a defendant against whom plaintiff states a claim and the application of a different legal standard. *See Jones*, 393 F.3d at 931; *Sullivan*, 609 F. App'x at 436. This court has the inherent authority to reconsider a previous order and to control its own docket. *See Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); *Yong v. Immigr. and Nat. Serv.*, 208 F.3d 1116, 1119 (9th Cir. 2000). Should the court adopt these findings and recommendations, a status conference will be held to assess whether the parties need additional, limited discovery, whether the parties require an opportunity for another round of dispositive motions, and other administrative matters that may secure the efficient resolution of this case.

petition for en banc rehearing remains pending before the Ninth Circuit. A "panel decision of the Ninth Circuit is binding on lower courts as soon as it is published, even before the mandate issues, and remains binding authority until the decision is withdrawn or reversed by the Supreme Court or an en banc court." *Nichols v. Harris*, 17 F. Supp. 3d 989, 993 (C.D. Cal. 2014) (citing *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012)). If the outcome of *Hines* does change, this court has the inherent authority to address any intervening change in law later in the case. *See Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

Notably, *Hines* affects only some of plaintiff's claims. The issue on appeal in *Hines*, qualified immunity, does not preclude plaintiff's claims for declaratory or injunctive relief against State Defendants, as discussed below. Qualified immunity similarly does not preclude plaintiff's claims against County Defendants in their official capacities. *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016). Critically, given plaintiff's serious allegation that he faces an ongoing danger, there appears to be no reason for delay. *See Dependable Highway Exp., Inc. v. Navigators Ins*. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) (noting that court abuses its discretion by staying proceeding "if there is even a fair possibility" that stay will cause damage unless proponent of the stay shows "hardship or inequity"). This case should move forward despite the status of *Hines*. Defendants' motions to stay should be denied.

### c.  Plaintiff's Motion to Supplement

Plaintiff moves for leave to "file supplemental pleadings." ECF No. 54. Even though the caption of the motion refers to pleadings, plaintiff appears to ask for leave to supplement his opposition to defendants' motions for summary judgment. *See id*. at 2-79. Because plaintiff appears pro se, plaintiff's motion is granted. The analyses below take into account plaintiff's additional submissions. But plaintiff's additional submissions are not enough to stave off summary judgment for defendants on some of his claims, as discussed below.

### III.  Parties' Motions for Summary Judgment

Plaintiff proceeds on conditions-of-confinement claims against State and County Defendants for exposing him to a risk of Valley Fever. He alleges that such risk has been heightened by factors such as his race, his psoriasis, and defendants' actions. All parties move for

8

summary judgment.

A district court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The dispute is material if it "might affect the outcome of the suit under the governing law." *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The court must view the record "in the light most favorable" to the nonmovant, *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018), and may not assess witnesses' credibility or weigh evidence, *see Soto v. Sweetman*, 882 F.3d 865, 877 (9th Cir. 2018).

At summary judgment, the movant bears the initial burden to show entitlement to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-27 (1986); *Friedman v. Live Nation Merch., Inc*., 833 F.3d 1180, 1188 (9th Cir. 2016). The burden then shifts to the party opposing summary judgment to show a genuine dispute of a material fact. *See Friedman*, 833 F.3d at 1188. When the parties cross-move for summary judgment, as they do here, the court reviews each motion "separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns, Inc*., 851 F.3d 990, 995 (9th Cir. 2017).

Here, the court should grant State Defendants' motion for summary judgment in part, grant County Defendants' motion for summary judgment in full, and deny plaintiff's motion for summary judgment.

### a. State Defendants' Motion for Summary Judgment

The court has allowed plaintiff to proceed against State Defendants for (1) approving CSH's construction, (2) placing him at CSH, and (3) failing to implement measures against Valley Fever at CSH. *See ECF No. 10 at 18-20, 24. The court should grant summary judgment on plaintiff's claims for damages, given the Ninth Circuit's decision in *Hines*. The court should also grant summary judgment on plaintiff's second claim that State Defendants placed him at CSH. The court should deny summary judgment in all other respects.

### i. Qualified Immunity

Qualified immunity shields government officials from money damages unless their conduct violated "clearly established statutory or constitutional rights." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." *Felarca*, 891 F.3d at 815. The court may address these steps in any order. *See id*. at 816.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," as shown in "controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. at 590. The legal standard at issue must also have a high "degree of specificity." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590. A legal principle is too broad if the unlawfulness of an official's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987)).

On the other hand, qualified immunity does not attach in an "obvious case," even if the case presents novel facts. *See Rodriguez v. Swartz*, 899 F.3d 719, 734 (9th Cir. 2018); *accord Hope v. Pelzer*, 536 U.S. 730, 738-39 (2002). The Ninth Circuit has explained:

> [S]ome things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt.

*Hines*, 2019 WL 405543, at *7 (quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082-83 (10th Cir. 2015)).  Thus, although a binding precedent can help determine what a reasonable official would have known, "it is not necessary . . . that the very action in question has previously been held unlawful."  *Rodriguez*, 899 F.3d at 732 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017)).

The *Hines* decision is instructive on qualified immunity in Valley Fever cases.  In *Hines*, a consolidated appeal, the plaintiffs challenged the constitutionality of housing inmates in a hyperendemic area for Valley Fever, placing inmates who have heightened susceptibility to that disease in that hyperendemic area, and failing to take measures against Valley Fever.[9]  The Ninth Circuit defined the constitutional right at issue as "the right to be free from heightened exposure to Valley Fever spores."  *Hines*, 2019 WL 405543, at *7.  After examining the existing case law, the court concluded that such right was not clearly established by any precedent or "robust consensus of cases of persuasive authority."  *Id.*  The court noted that various unpublished decisions involving Valley Fever did not clearly establish the requisite constitutional right and that it would be a "rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only."  *Id.* (quoting *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002)).

This case differs from *Hines* in that plaintiff is a civil detainee, not an inmate, but the principles of *Hines* hold true.  Plaintiff identifies no binding precedent establishing that a civil detainee had the constitutional right to be free from heightened exposure to Valley Fever spores, and we have found none.  Even though plaintiff cites unpublished opinions from courts within this circuit, the Ninth Circuit has concluded that the unpublished Valley Fever decisions have not clearly established a constitutional right to be free from heightened exposure to Valley Fever

_____

[9] *See Hines*, 13-cv-357, ECF No. 27 at 4-5 (challenging housing inmate in hyperendemic area knowing dangers of Valley Fever); *Jackson v. State of California*, No. 13-cv-1055, ECF No. 43 at 29-32, 41, 45, 48 (challenging incarceration of inmates more susceptible to Valley Fever in hyperendemic area, failing to warn plaintiffs of dangerous condition, and failing to take measures against Valley Fever) (E.D. Cal. May 8, 2014).

spores.  We may not reach a different conclusion.

The screening order in this case relied on *Helling v. McKinney*, 509 U.S. 25, 28 (1993), in declining to apply qualified immunity and defined plaintiff's clearly established constitutional right this way:

> Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard.

ECF No. 10 at 11.  The Ninth Circuit in *Hines* recognized that *Helling* established the "constitutional *framework* for Eighth Amendment claims about involuntary exposure to environmental hazards," but the court of appeals still concluded that "it would not have been clear to every reasonable officer that the inmates had a valid claim under *Helling*."  2019 WL 405543, at *6, 9 (emphasis added).  Although the court did not discuss whether the *Helling* decision itself clearly established a constitutional right, the reasoning in *Hines*—that even after *Helling*, there was no clearly established right to be free from heightened exposure to Valley Fever spores under the *Helling* framework—precludes the conclusion that *Helling* itself clearly established the constitutional right that plaintiff needs to overcome the qualified immunity defense.  *See Hornish v. King Cty.*, 899 F.3d 680, 693 (9th Cir. 2018) (noting that reasoning central to panel's decision is binding).  The Ninth Circuit also tied the constitutional right at issue to a particular disease by defining the right as "the right to be free from heightened exposure to *Valley Fever* spores," *Hines*, 2019 WL 405543, at *7 (emphasis added), so we may not define the constitutional right in this case any differently.

Plaintiff also has not shown that this is an obvious case in which qualified immunity cannot attach.  To show that State Defendants knew about the risks associated with Valley Fever, plaintiff adduces various publications, studies, and reports on Valley Fever.  *See* ECF No. 1 at 29-51; ECF No. 66 at 24-30, 64-75, 77, 96-110, 113-16.  The materials such as articles, newspapers, and a letter from a nonprofit organization that discuss generic information on Valley Fever do not help plaintiff because it is beyond dispute that Valley Fever is dangerous; what matters is whether State Defendants' action or inaction was obviously unlawful.  *See* ECF No. 66 at 24-30, 64-75,

12

77, 96-110, 113-16.  Only three items identified by plaintiff—including the June 2007 report from the federal receiver's committee—contain some warning or recommendation on how to mitigate the risk of Valley Fever, but these items are not enough.  *See* ECF No. ECF No. 1 at 36-51, 52-68; ECF No. 66 at 24-30.[10]  The existence of these materials may show that their contents were available to State Defendants, but it does not show that State Defendants learned about the materials' contents or that they could infer that they were violating a clearly established right.  Plaintiff presents no evidence as to how the materials at issue were disseminated, whether they were directed at State Defendants, or what State Defendants should have inferred from their contents.  Further, the fact that some experts recommended one approach does not show that the measures State Defendants already had in place were deficient, that the proposed approach was better than the existing approach, or that "every reasonable official" would have understood that their conduct was unlawful.  *See Wesby*, 138 S. Ct. at 590.

We note one issue that provokes some concern, although it is not raised by plaintiff.  Plaintiff states in his verified complaint that staff members and patients at CSH have died or suffered serious symptoms because of Valley Fever.  ECF No. 1 at 6-7.  The verified complaint states:

> Plaintiff alleges that the possibility of contracting the life-threatening disease of Coccidioidomycosis (commonly known as "Valley Fever"), did occur, and it almost cost some their life, but others infected died. . . .
>
> Most of the visible signs of infection occurred before Plaintiff came

---

[10] The first item, an undated report by Demosthenes Pappagianis, quantifies Valley Fever outbreaks and warns about "medical, demographic[,] and financial implications" for California that may arise from constructing new prisons in certain endemic areas.  ECF No. 1 at 53.  The second item, another report by Pappagianis, apparently published in 2000 through United States Geological Survey, provides guidelines for individuals on mitigating the risk of Valley Fever, including the suggestion that individuals who face higher risk of the disease "may be wise to . . . completely avoid locations containing favorable C. immitis growth sites . . . ."  ECF No. 1 at 44; *see also* Frederick S. Fisher, Mark W. Bultman, Demosthenes Pappagianis, Operational guidelines (version 1.0) for geological fieldwork in areas endemic for Coccidioidomycosis, UNITED STATES GEOLOGICAL SURVEY (2000), https://pubs.er.usgs.gov/publication/ofr00348.  The third item, a report from the federal receiver's committee dated June 2007, summarizes various recommendations on how to mitigate the risk of Valley Fever in California prisons.  ECF No. 1 at 36-68; ECF No. 66 at 24-30; *see also Hines*, 2019 WL 405543, at *3.

> to the institution. All those who contracted the disease—staff and patient—and survived experienced long term medical care. . . .

ECF No. 1 at 6-7. Unlike the publications and reports noted above, deaths within the hospital community would have been difficult to miss and could have alerted State Defendants to the need to re-examine or adjust their existing measures against Valley Fever. If State Defendants learned of those events and still decided to maintain ineffective measures against Valley Fever, that fact might qualify this case as one in which qualified immunity should not attach. On the other hand, even dedicated hospital administrators could lack the ability to save patients who had contracted Valley Fever. Notably, this is not a case in which medical providers chose not to care for patients; plaintiff does not dispute that CSH has put in place several precautions and procedures to mitigate the risk of Valley Fever, and plaintiff has yet to explain what makes State Defendants' measures deficient or how his proposed measures are superior. In addition, as a report from plaintiff indicates, "absolute prevention" of Valley Fever is "impossible." ECF No. 1 at 42. Put another way, assessing whether every reasonable official would have understood that their conduct was unlawful in this case requires additional details; if State Defendants adequately responded to the events alleged above but failed to save certain victims, what happened would have been tragic, but not obviously unlawful.

Ultimately, plaintiffs' statements in the verified complaint are too vague to allow the inference that State Defendants had fair warning that their conduct was obviously unlawful. Plaintiff does not describe how State Defendants responded to the alleged events. Without more details, the record does not allow the court to assess whether "every reasonable official" would have understood that his or her conduct was unlawful. *See Wesby*, 138 S. Ct. at 590.

We recognize plaintiff's difficulties litigating this case. Whether State Defendants should have adopted one approach against Valley Fever over another might be a prototypical example of a scientific fact requiring an expert witness—and an attorney. Still, it was incumbent upon plaintiff to be diligent in conducting discovery to the extent that he could and, if appropriate, promptly to seek the court's help. It was not until the end of discovery that plaintiff moved to compel, ECF Nos. 23, 24, 31 at 4-6. and, although the court informed plaintiff that it would

14

consider recruiting counsel for him, plaintiff has not requested counsel. Plaintiff may persuade the court otherwise later in the case by presenting more evidence, *see Smith*, 727 F.3d at 955, but for now, plaintiff has not shown that State Defendants had fair warning for qualified immunity purposes. Because plaintiff has not shown that case law clearly established the right to be free from heightened exposure to Valley Fever spores or that this is an obvious case in which qualified immunity should not apply, the court should grant summary judgment on plaintiff's claims for damages.

Granting summary judgment on qualified immunity grounds does not leave plaintiff in harm's way. Qualified immunity "applies only to liability for money damages—not injunctive or declaratory relief." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 616 (9th Cir. 2018). While the plaintiff in *Hines* asked only for damages,[11] the complaint in this case seeks declaratory and injunction relief:

> Plaintiff prays and request that the Court grant an **Injunction** and a **Declaratory judgment** that Defendants violated the laws and Constitution when and if Defendants continue to disavow the area is a life-threatening, dangerous location for African-Americans, Mexican-Americans, Native-American, and to numerous White-Americans housed at the State Hospital, California Department of State Hospital.

ECF No. 1 at 24 (emphasis in original). That some of the alleged violations happened in the past does not necessarily preclude declaratory or injunctive relief. *See Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (collecting cases). Although plaintiff does not identify the particular form of injunctive relief that he seeks, he challenges defendants' failure to implement measures to mitigate Valley Fever, so his submissions support the inference that he seeks implementation of certain measures against Valley Fever—or some other assurance of safety. *See* Fed. R. Civ. P. 54(c). Plaintiff also has not specifically identified the claim on which he seeks declaratory or injunctive relief, but his failure to do so does not warrant disregarding his requests for such relief.

---

[11] *See Hines*, 2019 WL 405543, at *6 ("None of the cases before us seek an injunction that would regulate how the state assigns inmates to the Central Valley or how it addresses the risk of Valley Fever. . . . The cases before us are only about whether individual defendants can be held liable for money damages because of allegedly unconstitutional acts and omissions.").

*See Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1123 (E.D. Cal. 2012) (reasoning that failure to "tie" prayer for declaratory relief to specific cause of action is common pleading technique that does not justify striking prayer). He can seek declaratory relief and injunctive relief for each of his claims.

In sum, the court should grant summary judgment on all claims for damages asserted by plaintiff because qualified immunity precludes those claims. Qualified immunity does not apply to plaintiff's claims for declaratory or injunctive relief.

### ii. Statute of Limitations

State Defendants contend that plaintiff's claims are time-barred because they accrued sometime in 2007, when he arrived at CSH. ECF No. 34 at 16-17. Because State Defendants have not shown when plaintiff learned about the dangers of Valley Fever, they have not shown that plaintiff's claims are time-barred.

Both federal and state law govern whether the statute of limitations bars a plaintiff's claims. State law governs the length of the limitations period and tolling, while federal law governs the accrual of a claim. *See Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017); *Jones*, 393 F.3d at 927. Federal courts in California have applied California's two-year statute of limitations for personal injury actions to Section 1983 claims. *See Klein*, 865 F.3d at 1278. California's equitable tolling doctrine can toll the limitations period by one year "for a claim asserted by a continuously confined civil detainee who has pursued his claim in good faith." *Jones*, 393 F.3d at 930. Under federal law, a claim under Section 1983 accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Klein*, 865 F.3d at 1278. The defendant bears the burden of showing that the plaintiff has sued after the expiration of the limitations period; the plaintiff bears the burden of showing entitlement to equitable tolling. *See Consiglio v. Brown*, No. 16-cv-1268, 2018 WL 3524600, at *5 (E.D. Cal. July 20, 2018) (citing *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007) and *United States v. Marolf*, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999)).

In a case involving Valley Fever, this court explained that a plaintiff's claim did not accrue when he "could not have known . . . about the nature of his injuries." *See Barron v.*

*Martel*, No. 10-cv-1567, 2014 WL 3362360, at *5 (E.D. Cal. July 9, 2014), *recommendation adopted*, 2014 WL 4298057 (E.D. Cal. Aug. 29, 2014). The court also observed that the continuing violation doctrine could "prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort," even though the Ninth Circuit had not applied the doctrine in the prisoner context. *Id.* at *6 n.1; *see also Woods v. Hamkar*, No. 12-cv-562, 2015 WL 4879538, at *4 (E.D. Cal. Aug. 14, 2015) (collecting lower court cases applying continuing violation doctrine).

      Here, State Defendants have not shown that plaintiff sued after the limitations period expired. Their argument relies on plaintiff's allegations:

> Plaintiff asserts that he "was not informed of the paralysis . . . danger of the disease before hand" . . . nor was he "told of the severity of the disease at the hospital when he arrived." If, upon arrival, he was only not informed of the paralysis danger, he admittedly was aware of other dangers associated with Valley Fever. He also states that "[m]ost of the visible signs of infection occurred before Plaintiff came to the institution." As he was aware of some of the injuries Valley Fever can cause when he arrived, just not the full extent . . . the date of accrual is the date he arrived at [CSH].

ECF No. 34 at 16-17 (citations omitted). State Defendants are mistaken. Plaintiff's allegation that he was not warned about the danger of paralysis upon his arrival at CSH is hardly an admission that he knew about other dangers associated with Valley Fever. Likewise, plaintiff's allegation about the visible signs of Valley Fever does not show that his claims accrued when he arrived to CSH. Plaintiff has not contracted Valley Fever, and the quoted allegation does not show that *plaintiff* observed the signs of infection and discovered its danger before he arrived at CSH. Further, even if plaintiff did observe the visible signs of Valley Fever before he arrived at CSH, he might not have recognized them as symptoms of the disease, since he had no specialized knowledge of Valley Fever.

      State Defendants have not shown that they are entitled to summary judgment on statute of limitations grounds, so the burden does not shift to plaintiff to show a genuine issue of a material fact. *See James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 923-24 (9th Cir. 2008). The court need not reach plaintiff's argument that the continuing violation doctrine should apply here.

### iii. Merits

State Defendants contend that plaintiff cannot prevail on his conditions-of-confinement claims because he has no evidence that State Defendants (1) caused the alleged violation or (2) knew about a substantial risk of harm to plaintiff. *See* ECF No. 34 at 14-16. We address each argument in turn.

#### a. Causation

A Section 1983 plaintiff must show that a defendant acting under color of state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). The plaintiff can satisfy the causation requirement by showing either (1) the defendant's "personal involvement" in the alleged deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a supervisor and the alleged deprivation. *See King*, 885 F.3d at 559. As for the second method, the plaintiff can establish a causal connection by showing that the defendant "set[] in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others," which the defendant "knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.*

Here, the court should grant summary judgment on plaintiff's claims against Ahlin and Kramer for placing him at CSH. Ahlin and Kramer contend that plaintiff has no evidence that Ahlin or Kramer caused plaintiff's placement at CSH. *See* ECF No. 34 at 15. Plaintiff produces no evidence in response. Indeed, an exhibit from plaintiff shows that the Superior Court for County of Alameda, not Ahlin or Kramer, ordered plaintiff's initial commitment to CSH in 2007. *See* ECF No. 50 at 7-8 ("The Sheriff of Alameda County shall transport the Respondent to Coalinga State Hospital, where he shall be retained until further order of the Court."). Plaintiff does not explain what Ahlin or Kramer could have done to affect his placement. He also offers no evidence that he asked to be transferred to another facility. The court should grant summary judgment on plaintiff's claims against Ahlin and Kramer for placing him at CSH.

After the inadvertent dismissal of Allenby, no one argues that the court should grant summary judgment on plaintiff's claim that Allenby failed to implement appropriate measures against Valley Fever. Thus, plaintiff's claim against Allenby is not subject to summary judgment.

Mayberg argues, "there is no evidence that [CSH] was *built to only house individuals who have higher susceptibility* to Valley Fever [or that] Defendant Mayberg [had] *sole authority* over the approval and building of [CSH]." ECF No. 34 at 14 (emphasis added). Plaintiff's claim against Mayberg arises from the approval of CSH's construction in a hyperendemic area, not any decision to build the hospital to house exclusively patients with higher susceptibility to that disease. *See* ECF No. 10 at 18-19. And plaintiff can satisfy the causation requirement by showing that Mayberg either (1) "set[] in motion a series of acts by others" that led to the alleged deprivation or (2) "knowingly refus[ed] to terminate a series of acts by others," which Mayberg "knew or reasonably should have known would cause others to inflict a constitutional injury." *See King*, 885 F.3d at 559. Neither method for showing causation requires plaintiff to show that Mayberg had "sole authority" to approve CSH's construction, and Mayberg cites no law in support of that argument. Mayberg's argument fails as a matter of law, and the burden does not shift to plaintiff to show a genuine issue of a material fact.

### b. Knowledge

State Defendants contend that "there is no evidence that any of the [State Defendants] knew of a substantial risk of harm to Plaintiff to support an Eighth Amendment claim." ECF No. 34 at 17. The court should decline to grant summary judgment on this ground.

Plaintiff is a civil detainee, not a prisoner. The SVPA allows involuntary commitment of an individual convicted of certain enumerated sex offenses and diagnosed with a mental disorder that makes the individual a "likely" recidivist. *See* Cal. Welf. & Inst.Code §§ 6600(a)(1), 6601(a)(1); *see generally Jones*, 393 F.3d at 923. California law requires that those civil detainees "be treated, not as criminals, but as sick persons." Cal. Welf. & Inst. Code § 6250; *accord Hubbart v. Superior Court*, 19 Cal. 4th 1138, 1171 (1999). Individuals civilly detained under the SVPA are not held as punishment, and "they are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Jones*, 393 F.3d at 931 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)); *accord King v. Cty. of Los Angeles*, 885 F.3d 548, 556-57 (9th Cir. 2018); *Sanchez*, 2018 WL 4520964, at *1.

The Fourteenth Amendment, not the Eighth Amendment, governs a civil detainee's conditions-of confinement claims. A civil detainee at a state mental-health hospital has a Fourteenth Amendment due process right to safe conditions, and the framework now known as the *Youngberg* standard governs a civil detainee's conditions-of-confinement claim. *See Ammons*, 648 F.3d at 1027-31 (citing *Youngberg v. Romeo*, 457 U.S. 307, 310 (1982)). Under *Youngberg*, a hospital official's decision on a patient's safety "is presumptively valid" if made by a professional, 457 U.S. at 323, but the decision violates the Fourteenth Amendment if it "diverges from that of a reasonable professional," *Ammons*, 648 F.3d at 1027; *see also Youngberg*, 457 U.S. at 323.[12] The divergence must be a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Ammons*, 648 F.3d at 1027. The substantial departure required under *Youngberg* has been equated to gross negligence applicable in "ordinary tort cases." *Id*. at 1029. The Ninth Circuit's "Fourteenth Amendment jurisprudence. . . has never required officials to have subjective awareness of the risk of harm." *Id.* 648 F.3d at 1029 n.7.

Here, State Defendants argue that "in the context of a *deliberate indifference* claim pursuant to the Fourteenth Amendment's Due Process Clause, which is applicable here because Plaintiff is a civil detainee, the official must . . . know of and disregard a substantial risk of harm." ECF No 34 at 15 (emphasis added). State Defendants rely on *Simmons v. Navajo Cty.*, a

---

[12] The Supreme Court defined a "professional" decisionmaker this way:

> By "professional" decisionmaker, we mean a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded. Of course, day-to-day decisions regarding care—including decisions that must be made without delay—necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons.

*Youngberg*, 457 U.S. at 323 n.30.

case involving a pretrial detainee, not a civil detainee. *See* 609 F.3d 1011, 1014, 1017 (9th Cir. 2010). State Defendants appear to rely on *Simmons* for the proposition that the deliberate indifference standard applies broadly to Section 1983 cases in non-prisoner contexts. *Simmons* relied on *Clouthier v. County of Contra Costa* for the proposition that the same standard could apply to both Eighth Amendment and Fourteenth Amendment claims. *See* 609 F.3d at 1017 (citing 591 F.3d 1232, 1243-44 (9th Cir. 2010)). The cited portion of the *Clouthier* decision, however, was overruled by the en banc decision in *Castro v. Cty. of Los Angeles*, in which the Ninth Circuit explained, "We therefore overrule *Clouthier* to the extent that it identified a single deliberate indifference standard for all § 1983 claims . . . ." 833 F.3d 1060, 1070 (9th Cir. 2016). Plaintiff argues that the *Youngberg* standard applies in his opposition brief, but State Defendants have not responded to plaintiff's argument in their reply. *Compare* ECF No. 44, at 11-14, *with* ECF No. 58, at 2-6. Since the deliberate indifference standard does not apply, State Defendants' argument is misplaced; the burden therefore does not shift to plaintiff to raise a genuine dispute of a material fact.[13] State Defendants have raised no other argument under the Fourteenth Amendment, so we go no further. Because plaintiff's claims were analyzed under the Eighth Amendment, through no fault of the parties, it appears that the parties should be allowed another round of briefing to address the merits under the Fourteenth Amendment.

In sum, the court should grant State Defendants' motion for summary judgment in part. Qualified immunity precludes plaintiff's claims for damages, but it does not apply to plaintiff's claims for declaratory or injunctive relief. The court should also grant summary judgment on plaintiff's claims against Ahlin and Kramer for placing him at CSH because plaintiff has offered no evidence that they caused plaintiff's placement at CSH. The court should deny State Defendants' motion for summary judgment in all other respects. Two sets of claims remain against State Defendants: (1) Fourteenth Amendment claims against Mayberg for approving

---

[13] It also appears that State Defendants learned about the dangers of Valley Fever at least some time after the opening of CSH. *See* ECF No. 34-5 at 2-3 (Ahlin Decl.) ("In 2005, I learned that Valley Fever cases were being reviewed at Pleasant Valley State Prison. It is my understanding that the spores that can cause Valley Fever naturally-occur in the Central Valley. . . . .").

CSH's construction; and (2) Fourteenth Amendment claims against Allenby for failure to implement measures to mitigate the risks associated with Valley Fever. Plaintiff seeks declaratory and injunctive relief for both claims. The court should dismiss all State Defendants other than Mayberg and Allenby from this case. If the court adopts these findings and recommendations, a status conference should be held to assess, among other things, whether to allow additional discovery, whether to allow another round of dispositive motion briefing, and whether to recruit counsel for plaintiff.

### b. County Defendants' Motion for Summary Judgment

Plaintiff proceeds on claims against County Defendants in their official capacities for their alleged failure to prevent CSH's construction in a hyperendemic area. *See* ECF No. 10 at 10, 19, 128; ECF No. 48 at 2.[14] Plaintiff alleges:

> Defendants, Fresno Board of Supervisors, whom are located within the city of Fresno, California was and is a public entity with the official authority to *approve or disapprove* any acquisition of property, and or land to construct any new facilities to house or incarcerate individuals on the County's uncultivated agricultural fields and territory. In light of the aforementioned, Plaintiff claims that prior to the breaking of ground to build CSH, the Defendant[']s Board Members were admonished of the future dangers, but *did not relent to block construction of the facility*. Hence, Defendants are liable in their individual and official capacity for the risk, negligent or reckless action of allowing an institution to be constructed at an area that scientific research has proven it is a dangerous location.

ECF No. 1 at 10-11 (emphasis added). Plaintiff appears to mean that County Defendants violated his constitutional rights in two ways: (1) allowing CSH's construction and (2) approving the transfer of the land for CSH. County Defendants move for summary judgment, arguing that plaintiff has sued the wrong defendants and that County Defendants did not cause the alleged constitutional violations. ECF Nos. 32, 33.

The standard governing causation under Section 1983—discussed above—also applies here. A Section 1983 plaintiff can establish causation by showing either the defendant's "personal involvement" in the alleged deprivation or a "sufficient causal connection" between the

---

[14] Qualified immunity does not apply to plaintiff's claims against County Defendants in their official capacities. *See Mendiola-Martinez*, 836 F.3d at 1250.

defendant's conduct and the alleged deprivation.  *See King*, 885 F.3d at 559.  Here, plaintiff cannot show that County Defendants caused the either of the two alleged constitutional violations.

### i. Allowing Coalinga State Hospital's Construction

Plaintiff's first claim against County Defendants—that they allowed the construction of CSH knowing the dangers of Valley Fever—warrants little discussion.  Plaintiff presents no evidence that County Defendants could prevent CSH's construction.  Indeed, it appears implausible that County Defendants could do so: the land for CSH was annexed to the City of Coalinga in 1999, and CSH's construction began in 2001—after the annexation of the land to the city—so the land appears to have belonged to the city, or some party other than County Defendants, when CSH's construction began.  ECF No. 32-4 at 6 (record from Fresno County showing annexation of land in 1999); ECF No. 54 at 76 (undisputed fact that CSH's construction began in 2001); ECF No. 60 at 5 (same).

Because plaintiff presents no evidence that County Defendants could prevent CSH's construction, plaintiff cannot show that County Defendants caused plaintiff's exposure to Valley Fever.  The court should therefore grant summary judgment on plaintiff's claim that County Defendants allowed CSH's construction.

### ii. Approving Transfer of Land for Coalinga State Hospital

Plaintiff cannot show that County Defendants caused plaintiff's exposure to Valley Fever by approving a transfer of the land for CSH in 1999.  County Defendants' submissions show—and the parties agree—that Fresno LAFCO, not County Defendants, approved the annexation of the land for CSH in 1999.  Despite its name, Fresno LAFCO was not controlled by Fresno County.

In California, every county has a local agency formation commission, also known as a LAFCO.  *See* Cal. Gov't Code § 56325; *City of Selma v. Fresno Cty. Local Agency Formation Com.*, 1 Cal. App. 5th 573, 577 (Cal. Ct. App. 2016).  A LAFCO oversees local agency boundary changes, including proposed annexations, under the statutory framework of the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000.  *See* Cal. Gov't Code § 56000 *et seq*.;

*Sierra Club v. San Joaquin Local Agency Formation Com.*, 21 Cal. 4th 489, 495 (1999); *Fresno Cty. Local Agency Formation Com.*, 1 Cal. App. 5th at 577. A LAFCO serves several goals, including orderly urban development and consideration of different local agencies' conditions and circumstances. *See* Cal. Gov't Code § 56301; *Sierra Club*, 21 Cal. 4th at 495; *Placer Cty. Local Agency Formation Com. v. Nevada Cty. Local Agency Formation Com.*, 135 Cal. App. 4th 793, 798 (2006).

Under California law, a LAFCO functions as an independent agency and is not part of a county, city, or a special district. For most counties, the LAFCO's members include two county representatives appointed by the county board of supervisors, two city representatives appointed by cities in the county, two officers or members legislative bodies of independent special districts, and one public representative appointed by other members of the LAFCO. *See* Cal. Gov't Code § 56325.[15] When a LAFCO proposes an action, such as annexation, it notifies the public and government agencies, allowing interested parties an opportunity to oppose the proposed action in a proceeding.[16] California law requires LAFCO members to exercise independent judgment on behalf of the public as a whole, rather than on behalf of their appointing local authority. *See* Cal. Gov't Code § 56325.1; *Cequel III Commc'ns I, LLC v. Local Agency Formation Com. of Nevada Cty.*, 149 Cal. App. 4th 310, 329 (2007). Given these safeguards, the California Court of Appeal has rejected the argument that LAFCO commissioners are "local officials" accountable to a county. *See Placer Cty. Local Agency Formation Com.*, 135 Cal. App. 4th at 812.

Here, plaintiff cannot show that County Defendants caused Fresno LAFCO to approve the annexation of land for CSH. The process for approving the 1999 annexation of land for CSH involved many actors, as evidenced by the declaration of Brandi Orth, the Fresno County Clerk

---

[15] For Fresno LAFCO, special districts have elected not to have representatives. *See* FRESNO LOCAL AGENCY FORMATION COMMISSION, *Who are the members of LAFCO?*, http://www.fresnolafco.org/FAQ.asp#Who_are_the_members_of_LAFCO.

[16] *See generally* Cal. Gov't Code §§ 56325, 56375, 56654, 56658-56668.5 (discussing proceedings before LAFCOs); *City of Selma v. Fresno Cty. Local Agency Formation Com.*, 1 Cal. App. 5th 573 (Cal. Ct. App. 2016) (same); *Placer Cty. Local Agency Formation Com.*, 135 Cal. App. 4th at 812 (noting that safeguards against arbitrary action by LAFCO allow dissatisfied citizens to override LAFCO's decision).

and Registrar of Voters. *See* ECF No. 32-4 at 7-8 (summarizing process and hearings for Fresno LAFCO's Resolution No. RO-99-3). Plaintiff presents no evidence that County Defendants—with only two county representatives—controlled the annexation, that those two county representatives in Fresno LAFCO failed to act independently as required by law, or that Fresno LAFCO otherwise acted on behalf of County Defendants. With no evidence that County Defendants caused Fresno LAFCO to approve the annexation, no reasonable jury could find that County Defendants ultimately caused plaintiff's exposure to Valley Fever. The court should therefore grant summary judgment on plaintiff's claim against County Defendants for approving of the annexation of land for CSH.

In sum, the court should grant summary judgment on all claims against County Defendants on causation. We need not reach other defenses raised by County Defendants.

## IV. Plaintiff's Motions for Summary Judgment

Plaintiff moves for summary judgment on his claims against State and County Defendants. ECF Nos. 44, 45, 46, 59, 62. In his summary judgment motions, plaintiff argues that the court should deny defendants' motions for summary judgment and states that there are genuine disputes of material fact; he does not develop an argument why the court should grant summary judgment in his favor. *See* ECF Nos. 44 at 5, 11, 15; ECF No. 59 at 10, 13, 16-17, 19-20; ECF No. 62 at 9, 15, 19. Thus, despite the documents' captions, plaintiff has not shown either (1) that there are no genuine issues of material facts or (2) that he is entitled to judgment as a matter of law. The court should deny plaintiff's motions for summary judgment.

## V. Plaintiff's Motion to Amend

Plaintiff moves for leave to amend his complaint, adding individual members of Fresno LAFCO as new defendants. ECF No. 65. The court should deny plaintiff's motion for leave to amend without prejudice for two reasons. First, plaintiff has failed to explain how the proposed amendment is timely. Second, plaintiff has failed to explain how the proposed amendment is not futile.

### a. Timeliness

"[L]itigation is a winnowing process," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487

25

n.1 (2008), and each district court strives to secure the speedy and inexpensive resolution in every proceeding, *see* Fed. R. Civ. P. 1.  When a party seeks leave to amend after the deadline for amended pleadings has passed, courts consider motions for leave to amend applying Rule 16's "good cause" standard rather than the "liberal amendment policy" of Rule 15(a).  *See DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017).  Rule 16 asks "whether the requesting party was diligent in seeking the amendment." *Id*.  For example, when a party has been informed in the pleading stage about a deficiency and moves for leave to amend after the filing of a motion for summary judgment, the court need not grant leave to amend.  *See id.*

On the other hand, a court has a "duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." *Chess*, 790 F.3d at 971; *accord Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (noting "the purpose of the Federal Rules to eliminate procedural booby traps which could prevent unsophisticated litigants from ever having their day in court").  Thus, even at summary judgment, a district court abuses its discretion by denying leave to amend when a pro se litigant seeks amendment to cure "the complaint's deficiencies . . . by naming the correct defendant." *Crowley*, 734 F.3d at 978.

Here, plaintiff filed his motion to amend almost a year after the deadline for amended pleadings.  *See* ECF No. 18 at 1; ECF No. 65.  Even though plaintiff seeks to cure the deficiencies in his complaint by naming the individuals who plaintiff alleges are the correct defendants, County Defendants informed plaintiff that he had sued wrong defendants back in June 2017.  *See* ECF No. 20 at 9.  Plaintiff then had about four months to conduct discovery until the end of discovery in October 2017.  ECF No. 18 at 1.  Four months might not have been much time, but plaintiff had at least some opportunity to realize the deficiencies in his case against County Defendants, conduct limited discovery, ask for additional time for discovery if needed, and move to amend.  Because plaintiff does not explain in his motion how he has been diligent in identifying the new defendants he seeks to add to the complaint, the court should deny plaintiff's motion for leave to amend.  Should plaintiff choose to renew his motion for leave to amend, he

26

should explain how he has been diligent in identifying the new defendants.

### b. Futility

Should plaintiff renew his motion to amend, plaintiff must explain how his proposed amendment is not futile. The proposed amendment shows at least two deficiencies.

First, plaintiff asserts some claims on which he cannot prevail. For example, plaintiff cannot recover damages from State Defendants—as discussed above. Likewise, for the same reason that the court should grant summary judgment on plaintiff's claims against Ahlin or Kramer—plaintiff cannot show that they placed him at CSH—plaintiff cannot prevail against those defendants. The proposed complaint also appears to include claims that have already been dismissed, such as negligence claims. *See* ECF 66 at 10-13, 19.

Second, legislative immunity seems to preclude plaintiff's claims against members of Fresno LAFCO. A LAFCO annexation determination is a partly legislative and partly judicial process:

> It is settled by a long, unbroken line of case authority that the matter of forming and adding new territory to municipal corporations, like cities and towns, and the extent and character of the territory to be included, are legislative matters which the Legislature has delegated to local municipalities to be performed in accordance with the appropriate legislative acts . . . because the nature of the power exercised is legislative and political rather than judicial . . . LAFCO is merely a creature of the Legislature, exercising a legislative function.

> An administrative agency such as LAFCO is nonetheless quasi-legislative in nature, though it holds public hearings and considers testimony presented by any affected local agency or county or any interested person who wishes to appear. The fact that in the subject proceedings the agency was not enacting ordinances embodying rules and regulations does not make its actions any less quasi-legislative. Nor does the presence of certain elements usually characteristic of the judicial process mean that its action was quasi-judicial. The Legislature and administrators exercising quasi-legislative powers commonly resort to the hearing procedure to uncover, at least in part, the facts necessary to arrive at a sound and fair legislative decision. Hence the presence of certain characteristics common to the judicial process does not change the basically quasi-legislative nature of the subject proceedings.

*City of Santa Cruz v. Local Agency Formation Com.*, 76 Cal. App. 3d 381, 387 (Cal. Ct. App. 1978) (citations and internal alterations omitted). That a LAFCO annexation process is both

legislative and judicial does not preclude immunity, as immunity attaches to both legislative and judicial functions. *See generally Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp*., 235 F. Supp. 3d 1132, 1164-66 (E.D. Cal. 2017). Because plaintiff does not challenge the quasi-judicial aspect of the annexation process, such as conducting hearings, the analysis below focuses on legislative immunity.

"[L]egislators are absolutely immune from liability under § 1983 for their legislative acts." *Schmidt v. Contra Costa Cty*., 693 F.3d 1122, 1135 (9th Cir. 2012). To decide whether legislative immunity attaches, courts consider not "defined categories of government acts" but "the character and effect" of the particular conduct. *Schmidt*, 693 F.3d at 1135. Courts apply four factors: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu*, 315 F.3d at 1220 (internal quotation marks omitted). "The first two factors are largely related, as are the last two factors, and they are not mutually exclusive." *Schmidt*, 693 F.3d at 1135 (quoting *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 960 (9th Cir. 2010)). Legislative immunity protects legislative acts at the federal, state, and local levels. *See Comm. to Protect our Agric. Water*, 235 F. Supp. 3d at 1164.

Here, all four factors appear to favor a finding that the approval of the land annexation was a legislative act. First, a purchase or sale of land can constitute a formation of policy if it pertains to budgetary concerns. *See Cmty. House*, 623 F.3d at 961 (reasoning that approval of sale of facility by mayor and council members was not ad hoc decision but policy formulation because it pertained to government budget and public funding). The annexation process here entailed some exchange of property tax revenues caused by the jurisdictional change associated with the annexation. *See* ECF No. 32-4 at 7. Second, the annexation affected the public at large: housing civil detainees under SVPA. *See Cmty. House*, 623 F.3d at 960 (reasoning that sale of facility for homeless individual affected public at large). Third, the annexation was formally legislative in character, as the annexation entailed a resolution by a vote from Fresno LAFCO members. *Schmidt*, 693 F.3d at 1137 ("[T]he fact that a decision was made by voting or through

an equivalent legislative procedure . . . weighs in favor of legislative immunity . . . .");

ECF No. 32-4 at 8. Fourth, the annexation required Fresno LAFCO to consider the factors

enumerated under the California Government Code Section 56668.3. *See id.* ("The hallmarks of

traditional legislation include the use of discretion, the making of policy that implicates budgetary

priorities and the provision of services, and prospective implications that reach beyond the

particular persons immediately impacted."); *Cmty. House*, 623 F.3d at 962 ("[T]he individuals

involved in the decision . . . had to weigh important social demands inherent in the City's policy

of helping the homeless against significant individual rights. Legislators involved in such

balancing are generally entitled to absolute legislative immunity."); Cal. Gov't Code § 56668.3

(listing factors to consider for annexation); ECF No. 32-4 at 7 ("[A]t its hearing on Apri128,

1999, this Commission considered all relevant factors and heard all interested parties wishing to

speak on said application . . . .").

The issues identified above warrant at least some explanation from plaintiff. The court

should deny plaintiff's motion for leave to amend without prejudice.

**VI.    Order**

Plaintiff's motion for leave to supplement opposition to summary judgment, ECF No. 54,

is granted.

**VII.    Findings and Recommendations**

We recommend that the court:

(1) deny State and County Defendants' motions for stay, ECF Nos. 51, 52.

(2) grant in part deny in part State Defendants' motion for summary judgment,
ECF No. 34.

(3) grant County Defendants' motion for summary judgment, ECF Nos. 32, 33.

(4) deny plaintiff's motions for summary judgment, ECF Nos. 44, 45, 46, 59, 62.

(5) deny plaintiff's motion for leave to amend complaint without prejudice,
ECF No. 65.

(6) dismiss all claims except:

   a.   claim against defendant Stephen Mayberg for approving CSH's

29

construction; and

  b. claim against defendant Cliff Allenby for failure to implement measures at CSH to mitigate the risks associated with Valley Fever.

  (7) dismiss all defendants except defendants Mayberg and Allenby.

  These findings and recommendations are submitted to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: __February 25, 2019__      _____
                 UNITED STATES MAGISTRATE JUDGE

No. 202